# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 27, 2008

Charles R. Fulbruge III
Clerk

No. 07-30229

BRIAN A. AUDLER, on his own behalf and on behalf of all others similarly situated,

Plaintiff - Appellant,

v.

CBC INNOVIS INC., et al.,

Defendants - Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before STEWART, OWEN, Circuit Judges, and MEANS, District Judge.[*]

CARL E. STEWART, Circuit Judge:

Brian A. Audler ("Audler") appeals from the district court's dismissal of his class action lawsuit predicated on the Defendants' allegedly erroneous determinations that property owned by Audler and the other class members was located outside of a Special Flood Hazard Area ("SFHA") when, in fact, the property was located in a SFHA. We first find that Audler lacks standing to bring claims against any Defendant other than CBC Innovis Inc. ("CBC"), and therefore dismiss these claims for lack of standing. The primary remaining issue on appeal is whether under Louisiana law, CBC, a company which provides flood

_____

[*] District Judge for the Northern District of Texas, sitting by designation.

zone determinations to lenders, owed a duty to Audler, the owner of a property allegedly erroneously determined to be located outside of a SFHA.  Because we agree with the district court's holding that there was no duty owed by CBC to Audler, we affirm the district court's dismissal of Audler's claims for negligence, negligent misrepresentation, and failure to warn.  In addition, finding no reversible error, we affirm the district court's dismissal of Audler's claims for detrimental reliance and breach of warranty.

I.

The National Flood Insurance Act of 1968 ("NFIA"), 42 U.S.C. § 4001, et seq., established the National Flood Insurance Program ("NFIP") because private insurers were unable to offer reasonably priced flood insurance to the increasing number of people living in flood-prone areas.  The NFIP (1) made federally subsidized flood insurance available in flood-prone areas and (2) encouraged states and localities to adopt land use policies and regulations that reduce the risk of flood damage.  42 U.S.C. § 4001(a)-(e); Till v. Unifirst Fed. Sav. & Loan Ass'n, 653 F.2d 152, 159 (5th Cir. 1981).  In 1973, Congress enacted the Flood Disaster Protection Act, which amended the NFIA to require flood insurance for loans secured by improved real estate situated within a federally-created SFHA and to mandate that banks and similar lending institutions determine whether a property is located in a SFHA and, if so, ensure that flood insurance is obtained.  See 42 U.S.C. §§ 4104a and 4012a(b)(1).

After widespread floods in the Midwest in 1993, Congress enacted the National Flood Insurance Reform Act ("Reform Act"), which imposed new obligations on mortgage originators and services.  The Reform Act amended the NFIA to require that if a lender determines that a purchaser's property is located in a SFHA, the lender must notify the purchaser of the flood hazard in a written notice within a reasonable time before the completion of the transaction.  42 U.S.C. § 4104a(a)(1); 12 C.F.R. 339.9.  In addition, the Reform

Act also strengthened the mandatory purchase requirements by requiring lenders to force-place flood insurance if it is determined that flood insurance is inadequate or non-existent. 42 U.S.C. § 4102a(b); 12 C.F.R. 339.7. The Reform Act also amended the NFIA to permit lenders to delegate to third parties the task of determining whether a particular piece of property falls within a SFHA, but "only to the extent that such person guarantees the accuracy of the information." 42 U.S.C. § 4104b(d).

A determination under the NFIA that a property is not located within a SFHA does not prevent a borrower from purchasing private flood insurance.

## II.

In March 2001, Audler refinanced his home located at 3612 Juno Drive, Chalmette, Louisiana with Gulf Coast Bank and Trust Company ("Gulf Coast"). Gulf Coast is a regulated lender, and in compliance with the NFIA, Gulf Coast requested and obtained a Standard Flood Hazard Determination from CBC. CBC provides flood zone determinations to lenders subject to the NFIA. On March 19, 2001, at the request of Gulf Coast, CBC executed a flood zone determination regarding Audler's Chalmette, Louisiana property utilizing the "Standard Flood Hazard Determination" form. The form provides the following certification: "Is building/mobile home in special flood hazard area." On the form executed by CBC in relation to Audler's property, this question was answered in the negative. Audler alleges that the certification was incorrect, and that his property is actually located within a SFHA.

On August 29, 2005, Audler's property was damaged by floodwaters from Hurricane Katrina. At the time, Audler's property was not insured by flood insurance. He alleges that his failure to obtain flood insurance was due to CBC's certification that the property was not located in a SFHA.

Audler filed suit against CBC Innovis Inc. ("CBC")[1] and nineteen other Defendants alleged to be in the flood determination business, on his own behalf and as a representative of a class consisting of all homeowners and business owners (1) who sustained flood damage from Hurricanes Katrina and Rita in the state of Louisiana; (2) who had no flood insurance at the time of their flood losses; and (3) regarding whose property a flood zone determination was performed prior to the hurricanes which incorrectly determined their property to be outside of a Special Flood Hazard Area. Audler asserts a number of causes of action, all arising under Louisiana law: (1) negligence and negligent misrepresentation pursuant to Louisiana Civil Code Articles 2315 and 2316; (2) failure to warn; (3) detrimental reliance; (4) breach of guaranty or warranty; and (5) stipulation pour autrui. Audler's petition states that all claims are separate and apart from the federal flood insurance legislation governing lenders and that none of his claims arise under that legislation.

This case was originally filed in Louisiana state court in the Thirty-Fourth Judicial District Court for the Parish of St. Bernard, and was removed to federal court by Defendant FNIS Flood Services, L.P. based on jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), and diversity jurisdiction under 28 U.S.C. § 1332(a). Shortly thereafter, CBC timely filed another Notice of Removal which provided additional explanation for the CAFA and diversity jurisdictional grounds and also asserted other grounds for federal jurisdiction: federal question jurisdiction under 28 U.S.C. § 1331 and the NFIA,

---

[1] In his petition, Audler incorrectly stated that Defendant Flood Zone Determination Services performed the flood hazard determination on the 3612 Juno Drive, Chalmette, Louisiana property. It appears undisputed that the determination was actually performed by Defendant CBC.

and supplemental jurisdiction under 28 U.S.C. § 1367. Audler did not contest removal.[2]

Two motions to dismiss were then filed. First, CBC filed a motion to dismiss under Rule 12(b)(6) asserting that Audler's complaint does not state any grounds for relief under state law, either in tort or in contract.[3] With respect to the tort claims, CBC argued that when a flood zone determination company is hired by a lender to perform a flood zone determination, the flood zone determination company does not owe a duty to the borrower in the loan transaction. Second, the remaining Defendants ("Class Defendants"),[4] none of whom were involved in the preparation of Audler's flood zone determination, filed a motion to dismiss adopting the arguments of CBC, but also setting forth additional grounds for dismissing the claims against them: lack of standing, failure to allege causation, and improper joinder. After oral argument on the motion, the district court concluded that Audler's petition failed to state a claim for relief under Louisiana law. Consequently, the district court granted CBC's

---

[2] In its oral decision granting the motion to dismiss, the district court did not explicitly note which jurisdictional basis it was relying on. Notwithstanding the other alleged bases, the district court clearly possessed jurisdiction under CAFA – there was minimal diversity and at least 100 class members whose claims in aggregate totaled at least $5 million. See 28 U.S.C. § 1332(d)(2), (5) (2005).

[3] The motion to dismiss also argued that Audler failed to assert any claims under federal law, a point that Audler conceded in the court below. Thus, on appeal, the only issue before this Court is whether the district court correctly dismissed Audler's state law claims.

[4] A joint motion to dismiss was filed by the following Defendants: America's Flood Services, Inc.; American Flood Research, Inc.; CBA Information Services; Federal Flood Certification Corporation; First American Real Estate Solutions of Texas, L.P.; Floodgard, Inc.; FNIS Flood Services, L.P.; Geotrac, Inc.; Integrated Loan Services; Kroll Factual Data, Inc. (incorrectly sued as National Flood Research a/k/a Factual Flood Data); Landsafe Flood Determination, Inc.; Nationwide Total Flood Services, Inc.; Property Research Data, Ltd.; Retail Merchants Association, Inc. d/b/a Credit Bureau of Louisiana; Stewart Mortgage Information Services Co.; Stormwater Research Group; Trans Union Settlement Solutions, Inc.; Transamerica Flood Hazard Certification, Inc.; and Wells Fargo Insurance, Inc. Defendant Advantage Air, Land, & Sea filed a separate motion to dismiss asserting the same grounds for dismissal.

motion and dismissed all Defendants from the lawsuit. The district court then denied the other pending motions as moot. Audler timely appealed. Two of the Class Defendants, First American Real Estate Solutions of Texas, L.P. ("First American") and Wells Fargo Insurance, Inc. ("Wells Fargo") have filed a motion to dismiss Audler's appeal for lack of standing.

## III.

We review de novo a district court's Rule 12(b)(6) dismissal of a complaint. Muhammad v. Dallas County Cmty. Supervision & Corr. Dep't , 479 F.3d 377, 379 (5th Cir. 2007). In construing the complaint in a light most favorable to the plaintiff, this court affirms a 12(b)(6) dismissal if we determine that the plaintiff "would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." Id. at 379-80 (internal quotation omitted). Further, we review the district court's determination of state law issues de novo. Salve Regina College v. Russell, 499 U.S. 225, 232 (1991).

## IV.

Before turning to the district court's dismissal on the merits of Audler's claims, we first consider whether Audler has standing to assert claims on behalf of the potential class members against the Class Defendants, which have caused Audler no cognizable injury. In the motion to dismiss of First American and Wells Fargo, as well as the Class Defendants' opposition brief, the Class Defendants argue that Audler lacks standing to assert claims against the Class Defendants because none of these Defendants ever issued a flood determination for his property. Because standing is a jurisdictional requirement, we must address it before considering the merits of an appellant's claim. Doe v. Tangipahoa Parish Sch. Bd., 473 F.3d 188, 194 (5th Cir. 2006).

Ordinarily, under the general principles of standing, "a litigant may not merely 'champion the rights of another.'" Scottsdale Ins. Co v. Knox Park Constr., Inc., 488 F.3d 680, 684 (5th Cir. 2007) (citing Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc., 32 F.3d 205, 208 (5th Cir. 1994)). Instead, "a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." Raines v. Byrd, 521 U.S. 811, 819 (1997). Audler argues that these requirements do not prevent him from asserting claims against the Defendant Class on behalf of the potential class members because of the "juridical link" doctrine.

The Fifth Circuit has not yet addressed the juridical link doctrine, which arose out of the Ninth Circuit's decision in La Mar v. H & B Novelty & Loan Co., 489 F.2d 461 (9th Cir. 1973). LaMar held that a plaintiff without a cause of action against a specific defendant cannot "'fairly and adequately' protect the interests of those who do have such causes of action" for purposes of Rule 23(a). Id. at 466 (citations omitted). Nevertheless, the court went on to hold that if the plaintiffs as a group – named and unnamed – have suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme, or otherwise "juridically related in a manner that suggests a single resolution of the dispute would be expeditious," the claim could go forward. Id. This doctrine is premised on the notion that the class, not the class representative, is the relevant legal entity for the purpose of Article III justiciability concerns. See Payton v. County of Kane, 308 F.3d 673, 679 (7th Cir. 2002). Because no class has been certified and because, for the reasons discussed below, Audler's direct claims must be dismissed, he cannot serve as the representative of any properly certified class. FED. R. CIV. P. 23(a)(3),(4); Faircloth v. Fin. Asset Secs. Corp. Mego Mortg. Homeowner Loan Trust, 87 Fed. Appx. 314, 318 (4th Cir. 2004) (dismissing potential class members claims where lead plaintiff's direct claims were dismissed). Therefore, even were we to

recognize the juridical link doctrine as a basis for standing, Audler could not invoke it successfully. Without the prospect of class certification, Audler's claims against the Class Defendants are nothing more than attempts to assert the injuries of others and therefore must be dismissed for lack of standing. See Faircloth, 87 Fed. Appx. at 318; Warth v. Seldin, 422 U.S. 490, 499 (1975). Therefore, Audler's claims against the Class Defendants are dismissed and the motion to dismiss of First American and Wells Fargo is granted.

V.

We now turn to the dismissal of Audler's claims against CBC. Because CAFA is based on diversity jurisdiction, state substantive law governs the determination of whether Audler's petition states a claim for relief. See Braud v. Transp. Serv. Co., 445 F.3d 801, 803 (5th Cir. 2006) ("CAFA broadens diversity jurisdiction for certain qualifying class actions."); Ashland Chem. v. Barco Inc., 123 F.3d 261, 265 (5th Cir. 1997) ("Under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), in a diversity case a federal court must apply the substantive law of the state while following federal procedural rules."). There are, however, no definitive answers in Louisiana law to the questions presented. Accordingly, this Court, applying state substantive law, must make an educated "Erie guess" as to how the Louisiana Supreme Court would resolve the issues before us. Leonard v. Nationwide Mut. Ins. Co., 499 F.3d 419, 431 (5th Cir. 2007). In doing so, we may consult a variety of sources, including the general rule on the issue, decisions from other jurisdictions, and general policy concerns. Stanley v. Trinchard, 500 F.3d 411, 423-24 (5th Cir. 2007).

A.    Negligence and Negligent Misrepresentation

The first cause of action under Louisiana law alleged by Audler is for negligence and negligent misrepresentation under Louisiana Civil Code articles

2315 and 2316.[5] Under Louisiana law, "[t]he duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability." Lemann v. Essen Lane Daiquiris, 923 So. 2d 627, 633 (La. 2006); see also Barrie v. V.P. Exterminators, 625 So. 2d 1007, 1015 (La. 1993) (holding that "case by case employment of the duty/risk analysis is the appropriate standard in this state for determining legal responsibilities for negligent misrepresentations"). Under this approach, plaintiff must prove the following five elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

Lemann, 923 So. 2d at 633 (citing Fowler v. Roberts, 556 So. 2d 1, 4 (La. 1989)). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. Mathieu v. Imperial Toy Corp., 646 So. 2d 318, 321 (La. 1994).

A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Meany v. Meany, 639 So. 2d 229, 233 (La. 1994). The relevant inquiry under Louisiana law in a negligent misrepresentation case is "whether, as a matter of law, a duty is owed to this particular plaintiff to protect him from this particular harm." Barrie, 625 So. 2d at 1016. In deciding whether to impose a duty in a particular case, Louisiana courts examine "whether the plaintiff has any law (statutory, jurisprudential, or arising from general

---

[5] Article 2315 provides: "Every act whatever of man that causes damages to another obliges him by whose fault it happened to repair it." LA. CIV. CODE art. 2315(A) (2001). Article 2316 provides: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." LA. CIV. CODE art. 2316 (1996).

principles of fault) to support the claim that the defendant owed him a duty." Faucheaux v. Terrebonne Consol. Gov't, 615 So. 2d 289, 292 (La. 1993).

Audler argues that, under Louisiana law, CBC owed a duty to him to provide accurate information with regards to the flood zone determination because CBC knew that the determination would be provided to Audler and that Audler would reasonably rely upon the determination. Although Audler disclaims that his arguments arise under federal law, he relies heavily on the portions of the NFIA and implementing regulations which require that a borrower be notified of the results of the flood determination. In response, CBC argues that Audler was not a member of the limited group for whose benefit and guidance the flood zone determination was supplied, and thus, under Louisiana law, no duty was owed to Audler. In support, CBC also points to the NFIA for the proposition that the flood zone determination was undertaken solely for the benefit of the lender.

In support of his argument that CBC owed him a duty, Audler relies on Barrie v. V.P. Exterminators, 625 So. 2d at 1007. In Barrie, the seller of a home obtained a termite inspection report that negligently concluded that the home had no evidence of termite infestation. The purchaser of the home sued V.P, alleging negligent misrepresentation. The Louisiana Supreme Court reversed the lower courts and held that the termite inspector owed the buyer a duty to provide accurate information. The court first noted that "Louisiana is a jurisdiction which allows recovery in tort for purely economic loss caused by negligent misrepresentation when privity of contract is absent." Id. at 1014. The Court held that articles 2315 and 2316 are "sufficiently broad to encompass a cause of action for negligent misrepresentation." Id. at 1014. The Court explained that:

> The duty was owed to the Barries even though they were a third party to V.P., without privity of contract or direct or indirect contact, because they were known to

> V.P. as the intended users of the report. The Barries were members of the limited group for whose benefit and guidance the report was contracted and supplied. V.P. owed the duty to the Barries because of its knowledge that the ultimate purpose for the report, and its employment, was to facilitate the sale of the dwelling it inspected. The Barries' expected use of the report made the magnitude of their loss a foreseeable probability. The obligation for the liability is imposed by law based upon policy considerations due to the tortfeasor's knowledge of the prospective use of the information which expands the bounds of his duty of reasonable care to encompass the intended user.

Id. at 1017. The court also found relevant the fact that "V.P. did not perform its services gratuitously." Id. Rather, V.P. "gathered and conveyed the information in the context of a business transaction for which V.P. received compensation." Id. Finally, the court noted that "[t]ort liability extending to third persons for whose benefit and guidance the wood destroying insect report is supplied, promotes the maintenance of a high quality of services by the licensed structural pest control operator and imparts confidence in those services to the contracting party and to those persons who, due to current business practices, are expected to receive and rely upon the contents of the report." Id. at 1017-18.

Thus, the Barrie court identified a number of factors to consider when determining whether a duty is owed where the plaintiff alleges negligent misrepresentation and there is absence of privity of contract or fiduciary relationship between the plaintiff and the alleged tortfeasor. First, is whether the tortfeasor could expect that the plaintiffs would receive and rely upon the information. Second, is whether the plaintiffs are members of the limited group for whose benefit and guidance the report was contracted and supplied. Third, is whether the report is prepared in the context of a business transaction for which the alleged tortfeasor received compensation. Fourth, is whether extending tort liability would serve public policy.

Audler argues that the application of the Barrie factors to the present case compels a finding that CBC owed Audler a duty to provide an accurate flood zone determination. We disagree and hold that a flood determination company retained by the lender to perform a flood zone determination on a borrower's property does not owe a duty to the borrower.

Audler's argument focuses primarily on the first Barrie factor — CBC's knowledge that the special flood zone report would be provided to him. We agree that given the requirements of the NFIA, CBC knew that Audler would be notified of the result of CBC's determination that Audler's property was located outside of a SFHA. However, standing alone, CBC's knowledge that Audler would receive the flood zone determination is not sufficient to impose a duty on CBC to provide accurate information to Audler. See Thomas v. Livingston Parish Sheriff's Office, 923 So. 2d 662 (La. Ct. App. 2005).

Further, and this is the key distinction between Barrie and the present case, Audler is not a member of the limited group for whose benefit and guidance the special flood hazard determination was prepared. Courts applying Louisiana law in similar circumstances have found dispositive whether the plaintiff was an intended user and beneficiary of the disseminated information. For example, in Thomas, 923 So. 2d at 662, plaintiff's property was seized and sold by the sheriff's department; the sale was later set aside due allegedly to improper appraisals. The Court held that plaintiff had no valid claim of negligence against the appraiser for the faulty appraisal because the appraiser, who was hired by the Sheriff's Office, was hired on behalf of the seizing creditor. Id. at 668. The only persons to whom a duty could be owed by the appraiser were the Livingston Parish Sheriff's Office and the seizing creditor. Id. Similarly, in McLachlan v. New York Life Ins. Co., 488 F.3d 624 (5th Cir. 2007), we considered whether an insurer owed a duty to disclose to the insured the results of medical tests undertaken by the insurer for the purposes of ascertaining whether the

insurer would extend coverage. As part of his application for increased life insurance benefits, McLachlan submitted blood and urine samples to his insurer, New York Life. Although the results indicated elevated levels of two chemicals, phosphatase and creatinine, New York Life mentioned only the former in its letter to McLachlan, explaining that it would issue a policy, but with a higher premium given the elevated phosphatase. After McLachlan was diagnosed with kidney failure, he sued New York Life under general Louisiana negligence law, complaining of the failure to advise him of the elevated creatinine. We held that McLachlan's negligence claims must fail because New York Life owed no duty to disclose the information to McLachlan. Distinguishing Barrie, we found that New York Life purchased the medical tests for its own purposes and that McLachlan was not an intended recipient of the report. Id. at 628. Conversely, courts have permitted a negligent misrepresentation claim where the plaintiff was the intended user of the information. See, e.g., Ducote Jax Holdings, L.L.C. v. Bradley, No. 04-1943, 2007 U.S. Dist. LEXIS 490088 (E.D. La. 2007) (defendant liable to plaintiffs for misrepresentations regarding legality of tax strategies because the plaintiffs were the intended users of the information); Lifecare Hosps., Inc. v. B&W Quality Growers, Inc., 887 So. 2d 624, 632 (La. Ct. App. 2004) (finding insurance company liable for negligently misrepresenting insurance coverage information to hospital because "Lifecare [the hospital] was a member of the limited group for whose benefit accurate information regarding coverage must be supplied").

Here, in contrast to the Barrie plaintiffs, and like the plaintiffs in Thomas and McLachlan, Audler was not the intended beneficiary of the flood zone certification. Gulf Coast, the lender in the present case, purchased the flood zone determination from CBC pursuant to the requirements of the NFIA. The NFIA provides for and regulates third-party flood zone determinations to ensure that lenders comply with the flood insurance provisions for the ultimate purpose

of reducing flood relief costs to the federal treasury. Wentwood Woodside I LP v. GMAC Commer. Mortg. Corp., 419 F.3d 310, 323 (5th Cir. 2005) (stating that the class protected by the NFIP is the federal treasury, not individual mortgagors). Although Congress intended to help borrowers damaged by flooding, "the principal purpose in enacting the [NFIP] was to reduce, by implementation of adequate land use controls and flood insurance, the massive burden on the federal fisc of the ever increasing federal flood disaster assistance." Till, 653 F.2d at 159. Therefore, the purpose of the requirement that a lender obtain a flood zone determination is not to inform the borrower of the home's flood zone status, but rather to protect the lender and the federal government from the financial risk that is posed by uninsured homes located in flood zones. See Id. The flood zone report was prepared for the benefit of the lender, and indirectly the federal government; Audler was neither the "intended user[] of the report," nor was he a "member[] of the limited group for whose benefit and guidance the report was contracted and supplied." Barrie, at 1017; see also Duong v. Allstate Co., 499 F. Supp. 2d 700, 704 (E.D. La. 2007) (distinguishing Barrie because a flood zone determination is undertaken for the benefit of the lender and not for the benefit of the borrower).

The third factor identified by Barrie is whether the information was supplied in the context of a business transaction for which the alleged tortfeasor received compensation. Here, the flood zone determination report was prepared in the context of a transaction between Audler and Gulf Coast, the refinancing of Audler's home, and CBC was compensated for the preparation of the report. However, in Barrie the court found that the 1701 Old Minden Rd # 11 Bossier City, LA"ultimate purpose for the report, and its employment, was to facilitate the sale of the dwelling it inspected." Indeed, in Barrie, the obligation to obtain the termite certificate arose in the purchase agreement between the seller of the home and the Barries. Audler argues that Gulf Coast's purpose of obtaining a

flood zone determination was the same as the purpose of the lender in Barrie–
to facilitate the completion of a transaction between the parties. This is not the
case. The obligation to obtain a flood certificate did not arise from an agreement
to obtain such in a contract between Audler and Gulf Coast Mortgage Company;
rather, the obligation arose from the requirements of the NFIA regulating the
lender regarding its collateral property. See 42 U.S.C. §§ 4012a(a), 4104b(d).
Although the need to undertake a flood zone determination may have been
triggered by Audler's refinancing, the purpose of the report was not to facilitate
the transaction. Instead, as explained above, Gulf Coast's purpose in obtaining
the flood zone determination was to aid Gulf Coast in complying with the NFIA
and to protect its collateral. See Oliver v. Cent. Bank, 658 So. 2d 1316, 1326 (La.
Ct. App. 1995) (holding that lender owes no duty to borrower to procure flood
insurance because lenders purpose in obtaining insurance pursuant to the NFIA
was to protect the  bank's collateral not to protect the borrower).

Fourth, the court must consider whether extending tort liability in these
circumstances would serve public policy. This Court has previously found that
Congress did not intend to create a private right of action for violations of the
NFIA. Till, 653 F.2d at 154. Of course, the question of whether a common-law
right of action exists for violations of the NFIA is a matter of state law. Till, 653
F. 2d at 161-62. However, state courts that have considered the issue have
rejected any such common law causes of action, based in part on principles of
federalism. See Mid-Am. Nat'l Bank of Chicago v. First Sav. & Loan Ass'n of S.
Holland, 161 Ill. App. 3d 531 (Ill. App. Ct. 1987) ("We believe that the separation
of powers doctrine and the principles of federalism, which militated against
Federal courts formulating a private cause of action under the Flood Act, apply
with equal force against the adoption of a Federal statute as the standard of care
in a State negligent misrepresentation action."); R.B.J. Apartments, Inc. v. Gate
City Savings & Loan Assoc., 315 N.W.2d 284, 290 (N.D. 1982) ("The separation-

of-powers doctrine and principles of federalism militate against the adoption of the federal statute as the standard of care in a state negligence action when no private cause of action, either explicit or implicit, exists in the federal statute."). We have no reason to believe that the Supreme Court of Louisiana would find these federalism concerns any less persuasive than the other states which have rejected the notion of a private right of action predicated on violations of the NFIA.

Given that all but one of the *Barrie* factors weigh in favor of a finding that CBC did not owe Audler a duty under the circumstances, we are compelled to conclude that the Louisiana Supreme Court would find that Audler has not stated a claim for negligence or negligent misrepresentation under Louisiana law.

In this case, examination of decisions from other jurisdictions buttresses our conclusion that Louisiana would not recognize Audler's negligence claims. See *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, No. 06-11283, 2007 U.S. App. LEXIS 29738, at *12 (Dec. 21, 2007 5th Cir.)(considering decisions from other jurisdictions in making Erie guess). Indeed, every jurisdiction to consider the issue has rejected state-law claims of negligence by a borrower against a third-party determination company for an allegedly incorrect flood zone determination. *Duong v. Allstate Ins. Co.*, 499 F. Supp. 2d 700, 704 (E.D. La. 2007) (finding that under Lousiana law plaintiff could not state a claim for negligent misrepresentation because there was no duty to provide correct information to plaintiff); *Barras v. Cmty. Home Loan, LLC*, No. 06-2000, 2007 U.S. Dist. LEXIS 53534, at *8-9 (W.D. La. July 24, 2007) (holding that plaintiffs failed to state negligence claim against determination company); *Lusins v. First Am. Real Estate Solutions of Tex., L.P.*, No. 1:06CV646, 2007 U.S. Dist. LEXIS 43364, at *7-8 (S.D. Miss. June 14, 2007) (rejecting claim of negligence per se under Mississippi law); *Callahan v. Countrywide Home Loans, Inc.*, No.

3:06cv105/RV/MD, 2006 U.S. Dist. LEXIS 76362, at *4-7 (N.D. Fla. Oct. 20, 2006) (holding that Florida would reject negligence claim based on erroneous determination because determination company did not owe plaintiff a duty); Ford v. First American Flood Data Servs., No. 1:06CV00453, 2006 U.S. Dist. LEXIS 74350, at *15 (M.D.N.C. Oct. 11, 2006) (concluding that North Carolina would not recognize common law negligence claims premised on  allegedly incorrect flood zone determination); R.B.J. Apartments, Inc., 315 N.W. 2d at 290 ("We are not able to find a state cause of action . . . when no private cause of action, either explicit or implicit, exists in the federal statute."); Laurent v. Flood Data Servs. Inc., 766 N.E. 2d 221, 228 (Ct. App. Ohio 2001) (holding under Ohio state law that a state law claim for negligent misrepresentation could not lie because the borrower was not the one who requested the flood zone report and because there was no evidence the Determination Company believed the report was for the borrower's benefit).

Based on our weighing of the Barrie factors, the near unanimity of the large number of courts rejecting liability under these circumstances, and because of the federalism concerns present, we hold that the Louisiana Supreme Court would find that CBC did not owe a duty to provide Audler with a correct flood determination, and therefore, would reject Audler's negligence claims and affirm the district court's dismissal of these claims.

B.     Failure to Warn

Although Audler lists "failure to warn" as a cause of action in his brief's list of claimed causes of action, his substantive arguments in his brief fail to sufficiently address this cause of action.  In any event, Audler cannot succeed under this cause of action because a cause of action for failure to warn does not exist unless there is an affirmative duty to provide a warning. See Fryar v. Westside Habilitation Ctr., 479 So. 2d 883, 889 (La. 1985) (liability for failure to warn is dependant on there being an underlying affirmative duty).  As discussed

above, CBC did not owe a duty to provide Audler with an accurate flood determination. Consequently, we find that the Louisiana Supreme Court would find that Audler has failed to state a failure to warn claim against CBC. The district court's dismissal of this claim was not in error.

C.      Detrimental Reliance

Audler also alleges a cause of action for detrimental reliance, codified at Louisiana Civil Code article 1967.[6] The doctrine of detrimental reliance is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." Suire v. Lafayette City-Parish Consol. Gov't, 907 So. 2d 37, 59 (La. 2005). "To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." Id. Significantly, to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract. Id.

Under Louisiana law, "the focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment." Id. Here, we cannot find that the promise in question, CBC's certification that Audler's home was not located in an SFHA, was made in such a manner that Audler could have reasonably relied on that promise. First, the certification was not made to Audler, it was made to Gulf Coast, who requested

---

[6] Article 1967 provides: "A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable. LA. CIV. CODE art. 1967 (2001).

and paid for the certification for its use and benefit. See, e.g.,Duong v. Allstate Co., 499 F. Supp. 2d 700, 704 (E.D. La. 2007) (finding that a flood zone determination is undertaken for the benefit of the lender and not for the benefit of the borrower). Audler was merely provided with notification of the certification made by CBC to Gulf Coast, pursuant to an agreement between those two parties. Second, as discussed more fully above, Audler was not an intended beneficiary of the determination. See Oliver, 658 So. 2d at 1323 (finding no promise upon which plaintiffs could justifiably rely where lender did not obtain flood insurance in violation of the NFIA); c.f. McPherson v. Cingular Wireless, LLC, 967 So. 2d 573 (Ct. App. La. 2007) (employee not entitled to justifiably rely on code of conduct that was expressed in terms of a commitment to protect employer's reputation and not as a promise to protect the employee). Finally, even assuming Audler's home was located in an SFHA, nothing prevented Audler from obtaining an independent flood zone determination or private flood insurance. The facts do not support Audler's claim of detrimental reliance.

Because we conclude that the Louisiana Supreme Court would dismiss the detrimental reliance claims of Audler, we affirm the district court's dismissal of these claims.

D.    Breach of Guaranty and/or Warranty

A party "waives an issue if he fails to adequately brief it." Castro v. McCord, No. 05-21034, 2007 U.S. App. LEXIS 29277, at *4 (5th Cir. Dec. 17, 2007). Though pro se litigants' briefs are liberally construed so as to avoid waiver of issues, the indulgence for parties represented by counsel is necessarily narrower. See Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993). Other than mentioning that his petition contains a cause of action for "breach of guaranty and/or warranty," Audler's brief does not discuss this claim. The mere mention of a claim that has been appealed does not constitute a supported argument or

adequate briefing, nor does it preserve the issue for review, so this issue is waived.  See Castro, at *4.

E.    Stipulation Pour Autrui

Finally, Audler, citing to Civil Code article 1978,[7] claims that he is entitled to recover as a third party beneficiary because the contract between CBC and Gulf Coast created a stipulation pour autrui in his favor.  The Louisiana Supreme Court has identified three criteria for determining whether contracting parties have provided a benefit for a third party: "(1) the stipulation is manifestly clear; (2) there is certainty as to the benefit provided by the third party; and (3) the benefit is not a mere incident of the contract between the promisor and the promisee." Joseph v. Hosp. Serv. Dist. No. 2 of the Parish of St. Mary, 939 So. 2d 1206, 1212 (La. 2006).  "The most basic requirement of a stipulation pour autrui is that the contract manifest a clear intention; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof."

Audler has not presented any evidence that CBC and Gulf Coast intended him as a beneficiary of the contract between CBC and Gulf Coast.  To the contrary, it is clear that provision of the flood zone certification was done for the purpose of complying with the NFIA.  The district court's dismissal of these claims was correct.

VI.

---

[7] Article 1978 provides: "A contracting party may stipulate a benefit for a third person called a third party beneficiary.  Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement." LA. CIV. CODE art. 1978.

For the reasons stated above, we AFFIRM the district court's dismissal of Audler's claims. Further, the motion to dismiss the appeal brought by First American and Wells Fargo is GRANTED.