**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 28, 2011

No. 10-30651

Lyle W. Cayce
Clerk

LARRY GROOVER; AMBER LEE WELLS, natural guardian and mother of
Brianna Sadie Nicole; LAURA CRISTINA MARCADO, natural guardian and
mother of Matthew Gabriel Nickolas,

Plaintiffs - Appellants

v.

CAMP DRESSER & MCKEE INC., also known as CDM; WILLIAM E.
ROUEGE; ZURICH AMERICAN INSURANCE COMPANY; ACE
AMERICAN INSURANCE COMPANY,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-cv-00252-CJB-SS

Before REAVLEY, JOLLY, and STEWART, Circuit Judges.

PER CURIAM:[*]

Camp Dresser & McKee (CDM) contracted with St. Tammany Parish,
Louisiana (hereinafter the Parish) to serve as an independent contractor and
supervise and manage the removal and clean up of debris resulting from
Hurricanes Katrina and Rita. After competitive bidding, the Parish hired OMNI

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-30651

Pinnacle, LLC (OMNI) to provide all labor and materials necessary to remove the debris. In accordance with this contract, one of OMNI's subcontractors hired Groover Tree Services (GTS) to cut and trim trees at certain locations. As a crew from GTS was working at one of these sites, Chad Groover (Groover) was electrocuted and later died from complications related to the incident. Subsequently, Groover's family members brought a negligence action against multiple defendants. The parties filed cross motions for summary judgment. The district court granted the defendants' motion for summary judgment. We AFFIRM.

**I.**

On March 20, 2006, the Parish entered into a contract with CDM, a consulting engineering firm. Attached to the contract was a "Property Demolition Debris Removal Plan" (hereinafter PDDR) that defined the scope of CDM's services. The PDDR explained that CDM was to act as the Parish's designated representative to "monitor, supervise and manage all aspects of the demolition and debris removal contract and insure that only eligible work is performed." Following the signing of CDM's contract, the Parish awarded OMNI a contract whereby OMNI agreed to provide "all labor and materials and perform all of the work" necessary to remove designated hurricane debris. To assist OMNI in the performance of the contract, OMNI entered into a subcontract with Cahaba Disaster Recovery (Cahaba). In furtherance of its obligation under the subcontract with OMNI, Cahaba then entered into a subcontract with Sure Form, Inc. (Sure Form), which in turn, entered into an oral agreement with GTS.

On the morning of December 7, 2006, William Rouege (Rouege), a CDM work-site monitor, received a "Work-Site Plan" (WSP) that identified specific trees or limbs that the Federal Emergency Management Agency predetermined eligible and authorized for removal from the designated location. Rouege arrived at the work site, met with and discussed the work with the property owner, and

2

No. 10-30651

awaited the arrival of a work crew.  Shortly thereafter, the GTS work crew arrived at the job site.  Rouege performed a walkthrough with the work crew and identified the specific trees or limbs to be removed according to the WSP.  The work crew began to cut and trim trees identified on the WSP.  Groover was operating an aerial lift machine, which had been delivered on site to reach limbs and branches that were in the trees high above the work area.  As Groover maneuvered around the job site and raised the basket of the lift machine into place, the basket made contact with an energized power line, and he was electrocuted.  Seven months later, Groover died from complications resulting from the incident.

Subsequently, Larry Groover, Chad Groover's brother; Amber Lee Wells, the mother and guardian of Groover's daughter; and Laura Cristina Marcado, the mother and guardian of Groover's son (collectively Plaintiffs), filed suit against multiple defendants, including CDM, Rouege, and CDM's insurers, Zurich American Insurance Company (Zurich), and ACE American Insurance Company (ACE) (collectively Defendants).[1]  The Plaintiffs alleged that CDM was negligent and that the company's negligence caused Larry Groover to suffer mental anguish when he witnessed his brother's death.

The Defendants filed a motion for summary judgment.  Relevant here, they alleged that they did not have a legal duty to protect Groover from injury. The Plaintiffs filed a cross motion for partial summary judgment, asking the

---

[1] The Plaintiffs filed suit against numerous defendants, and the defendants filed several third-party claims.  Relevant to the present appeal, the Plaintiffs filed suit against CDM, Rouege, Zurich, ACE, Scottsdale Insurance Company (hereinafter Scottsdale), Omni, and Cahaba.  In *Groover v. Scottsdale Ins. Co.*, 586 F.3d 1012 (5th Cir. 2009), a panel of this court affirmed the district court's grant of summary judgment in favor of defendants Scottsdale, Omni, and Cahaba.  At issue in this case is the Plaintiffs' appeal of the district court's grant of CDM, Zurich, and Rouege's joint motion for summary judgment.  At the district court, ACE adopted this motion for summary judgment.  Thus, the district court's judgment also applied to ACE.  In a letter to this court, on November 1, 2010, ACE adopted CDM's filing with this court, claiming that its interests are aligned with CDM's.

3

No. 10-30651

district court to conclude that the Defendants had a statutory duty, under the Louisiana Overhead Power Line Safety Act (OPLSA), LA. REV. STAT. §§ 45:141–46, to contact the local electric company and have the power lines de-energized prior to the incident. The district court held a hearing on the parties' motions. After hearing arguments from the parties, the district court orally granted the Defendants' motion for summary judgment. The Plaintiffs timely appealed.

## II.

### A.

This court reviews a district court's grant or denial of summary judgment and application of state law *de novo*. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to provide specific facts showing the existence of a genuine issue for trial. *Id.* 56(c), (e).

### B.

This is a diversity case, and Louisiana state law governs the issue of liability. Under Louisiana law, the threshold issue in a negligence action is whether the defendant owed the plaintiff a duty. *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Meany v. Meany*, 639 So. 2d 229, 233 (La. 1994)). Whether a duty is owed is a question of law. *Audler*, 519 F.3d at 249. "In deciding whether to impose a duty in a particular case, Louisiana courts examine whether the plaintiff has any law to support the claim that the defendant owed him a duty." *Id.* (internal quotation marks omitted). Here, the Plaintiffs have not pointed to sufficient evidence to establish nor provided case law to support their contention that CDM owed GTS a duty.

4

The Plaintiffs claim that CDM was the principal and GTS was an independent contractor. Thus, they contend, CDM had a duty to GTS because CDM allegedly controlled and expressly authorized the unsafe work practices that led to Groover's death. *See Roberts v. Cardinal Servs. Inc.,* 266 F.3d 368, 380 (5th Cir. 2001) (explaining that, under Louisiana law, a principal is not liable for the injuries resulting from the negligent acts of an independent contractor, unless the principal retained "operational control" over the contractor's work, expressly or impliedly approved the unsafe work practices, or the activity is ultrahazardous). However, the Plaintiffs have not shown, as a threshold matter, that a principal-independent contractor relationship existed between CDM and GTS.

It is well-established under Louisiana law that "the relationship between the principal and the independent contractor is in large measure determined by the terms of the contract itself." *Duplantis v. Shell*, 948 F.2d 187, 193 (5th Cir. 1991) (internal quotation marks omitted). By examining the contract, the court can determine to what extent the alleged principal reserved the right to control the alleged independent contractor's work. *Id.* Here, the record shows—and the parties acknowledge—that CDM and GTS did not have a contract. CDM's contract was with the Parish. GTS's contract was an oral agreement with Sure Form. It appears that the Plaintiffs ask us to presume that the relationship between CDM and GTS was that of principal-independent contractor based on CDM's contract with the Parish, the PDDR, and CDM's General Health and Safety Plan for its employees. Having closely examined the record, we decline to hold that, as a matter of law, a principal-independent contractor relationship existed between the parties.

Finally, the Plaintiffs' argue that the district court erred in dismissing their partial motion for summary judgment because CDM's alleged duty arises under the OPLSA. However, this argument is contrary to the OPLSA's purpose.

No. 10-30651

The OPLSA provides a means by which powerline operators and owners can hold individuals and companies liable "for all damages, costs, or expenses incurred by the owner or operator as a result" of contact with powerlines during the course of unauthorized work. LA. REV. STAT. § 45:144(A). *See generally Moreno v. Entergy Corp.*, 49 So. 3d 418, 420–21 (La. Ct. App. 5th 2010) (energy company sought indemnification pursuant to the OPLSA). Thus, the Plaintiffs' arguments are unavailing and the district court did not err in dismissing their motion.

## III.

For the foregoing reasons, we AFFIRM the district court's judgment.