# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 4, 2022

Lyle W. Cayce
Clerk

No. 22-30069

JUANEA L. BUTLER, *Individually and as representative of all others similarly situated*,

*Plaintiff—Appellant*,

*versus*

E I DUPONT DE NEMOURS & COMPANY; STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF HEALTH, *Incorrectly named as Louisiana State Through the Department of Health and Hospitals*; DUPONT PERFORMANCE ELASTOMERS, L.L.C., *formerly known as* DUPONT DOW ELASTOMERS, L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-6685

Before CLEMENT, DUNCAN, and WILSON, *Circuit Judges*.

PER CURIAM:*

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 22-30069

After another dismissal, Juanea Butler's environmental tort case now comes before us for the third time. We find that she has failed to state a claim, and so AFFIRM.

**I**

We have set out the facts of this matter twice before. *See Butler v. Denka Performance Elastomer LLC* (*Butler I*), 806 F. App'x 271, 272–73 (5th Cir. 2020) (per curiam); *Butler v. Denka Performance Elastomer LLC* (*Butler II*), 16 F.4th 427, 432–35 (5th Cir. 2021). We do so again here only briefly.

E. I. DuPont de Nemours & Company owned and operated the Pontchartrain Works Facility (PWF) from 1969 until 2015, when it sold the plant (but retained the underlying land) to Denka Performance Elastomer LLC.[1] Butler claims that for decades, the PWF emitted unsafe levels of chloroprene into the air, thereby injuring nearby residents. She sued several parties in Louisiana state court, seeking class certification.

The defendants removed to federal court (which we blessed, *see Butler II*, 16 F.4th at 435–37), and throughout the litigation, more and more defendants were dismissed. After our last remand, only two remained: DuPont and the Louisiana Department of Health. They did not last long. Shortly after the case returned to the district court, they were both dismissed in two separate orders, finding that Butler failed to state a claim against either. Butler appealed both orders after the second left her with no remaining claims.[2]

---

[1] Denka used to be a defendant in this action. After Butler's previous stop in our court, it is no longer. *See Butler II*, 16 F.4th at 443–46.

[2] DuPont mentions in passing that Butler appealed before the district court entered a final judgment that complied with Federal Rule of Civil Procedure 58, implying that the appeal was premature. But a district court's noncompliance with Rule 58 does not bar Butler's appeal. *See Ueckert v. Guerra*, 38 F.4th 446, 451–53 (5th Cir. 2022); *see also* Fed.

No. 22-30069

## II

We review de novo a grant of a motion to dismiss under Rule 12(b)(6). *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018). A complaint survives a motion to dismiss when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A

First, DuPont. Against DuPont, Butler asserted claims of negligence, custodial liability, and battery. The district court found that Butler's claims were substantively identical to her prior claims against Denka—dismissal of which we already approved—and so dismissed them on the same grounds. Specifically, the court found that Butler failed to identify any specific standard of care to which DuPont had a duty to conform (for either negligence or strict custodial liability) and failed to offer anything other than conclusory allegations of battery.

Butler, unsurprisingly, disagrees. First, Butler argues that Louisiana Civil Code Articles 2315 and 2316 require DuPont to "conform to the standard conduct associated with a reasonable and prudent owner and operator of a chemical plant," such that they impose a duty sufficient to sustain a claim of negligence. Second, Butler argues that Louisiana Civil Code Article 2317.1 compels DuPont to "keep [its] property in a reasonably safe condition[,] . . . discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence" such that "custodial" liability lies. And third, Butler argues that

---

R. App. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.").

3

No. 22-30069

several paragraphs (which she numbers but does not otherwise discuss) from her petitions show that DuPont knew of and *intended* harm to her such that a claim for battery survives.

We'll begin by noting that we need not now address Butler's arguments that Articles 2315 or 2316 can sustain her negligence claim or that Article 2317.1 can sustain her custodial liability claim. Indeed, we already addressed those *exact* arguments in this *very case*. *See Butler II*, 16 F.4th at 443–46 (holding that none of the three code articles, nor "any other source of law," sustains a "sufficient legal duty to support a negligence or custodial liability claim" on Butler's facts). Butler does not attempt to grapple with that holding. She mentions it only once in passing,[3] and instead points us again to many of the very same cases (for the *very same propositions*) that we already found wanting in our previous review. Butler alleges nothing additional against DuPont that renders our previous holding inapplicable. *Butler II* resolves those arguments here against DuPont just as we resolved them before against Denka.[4]

---

[3] In doing so, she argues that the district court was wrong to adopt against DuPont the same reasoning it previously adopted against Denka. Butler argues that *some* of that reasoning was overturned on appeal, so adopting it again was error. Butler misunderstands what the district court did. The rest of the court's order makes clear it only reapplied the reasoning we affirmed on appeal.

[4] Butler argues (albeit unclearly) that Louisiana Civil Code Article 2322 sufficiently *modified* other duties under Louisiana law such that DuPont should be liable for failure to exercise reasonable care in its operation of the PWF, or that DuPont should be separately liable for violating Article 2322 itself. We are unconvinced on either front. Article 2322 establishes a claim for premises liability. *See Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 565 (5th Cir. 2003). To recover under Article 2322, Butler needed to allege facts that showed the PWF was "ruin[ed]," which, "for purposes of Article 2322 means the fall or collapse of a substantial component of the building." *Mott v. ODECO*, 577 F.2d 273, 276 (5th Cir. 1978). Butler alleges no such thing, so Article 2322 does not save her claims.

No. 22-30069

Butler's battery claim fares no better. To sustain a claim for battery, Butler needs to plausibly allege that DuPont caused "intentional offensive contact" with her. *Lawrence v. Sec. Pros.*, 743 So. 2d 247, 250 (La. Ct. App. 1999). DuPont intended offensive contact if it either "consciously desire[d] the physical result of [its] act, or [knew] that the result [was] substantially certain to follow from [its] conduct." *Id.*

The district court found that Butler asserted only conclusory allegations of battery, and on appeal, Butler does not meaningfully challenge that finding. Instead, in her brief, she spends two pages defining battery, and then asserts the conclusion that she "raise[d] a multitude of factual allegations sufficient to establish" that DuPont knew its actions would inevitably cause offensive contact. She points us—*by paragraph number alone*—to twenty-eight different paragraphs across three separate petitions (her original petition and two amended petitions) that she believes satisfies her pleading burden. We decline the invitation to divine the record on her behalf. Butler failed to adequately brief her argument, and thus we deem that argument waived. *See JTB Tools & Oilfield Servs., LLC v. United States*, 831 F.3d 597, 601 (5th Cir. 2016); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs.").[5]

All told, then, the district court did not err in finding that Butler failed to state a claim against DuPont.

---

[5] Butler tries to go into more detail in her reply brief, but nevertheless fails to make any argument beyond that her factual allegations are, apparently, self-evidently sufficient. Like the district court, we are unconvinced.

No. 22-30069

**B**

Now for LDH. Against LDH, Butler asserted a claim of negligence, claiming that despite notice of the PWF's unsafe emissions, LDH nevertheless failed to investigate the PWF or notify the public. The district court found that Butler failed to identify any legally cognizable duty that LDH owed her, and thus that her negligence claim failed.

It's hornbook law that "[a] threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citation omitted). "In deciding whether to impose a duty in a particular case, Louisiana courts examine whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Id.* (quotations and citation omitted).

Butler argues that such a duty derives from several sources. First, she points to a bevy of Louisiana code provisions—LA. REV. STAT. §§ 36:251, 40:4, 40:5, & 40:1290.2[6]—which she claims "assign general duties owed by LDH to the general public . . . relating to public health and safety[.]" In Butler's reading, investigation of and warning about the PWF fall under LDH's general duties "[t]o take such action as is necessary to accomplish the subsidence and suppression of diseases of all kinds" and "make all sanitary inspections." LA. REV. STAT. § 40:5(A)(2), (A)(7). LDH disagrees, and instead argues that the statutes Butler cites only establish the department and set general parameters for its goals and activities. Such

---

[6] Section 40:1290.2 (which Butler cites but does not otherwise explain) is clearly inapplicable here. It directs LDH to "lead a collaborative effort to evaluate the issues and conditions of drinking water treatment and distribution in communities throughout Louisiana" by performing various tasks. LA. REV. STAT. § 40:1290.2. Nothing in this case involves evaluating the quality of drinking water.

No. 22-30069

general language cannot sustain a specific duty, says LDH. LDH argues that Butler fails to point to any specific standard of care, and thus that Butler's claim of negligence cannot lie.

We agree with LDH. Just as Butler needed to do for its claims against DuPont, she must identify a "specific standard of care" that LDH had to maintain. *Butler II*, 16 F.4th at 444–45 (quotations and citation omitted). The statutes Butler points to do not set any specific standard. Instead, they merely establish LDH's general role in the state, the general powers it holds, and the general contours of its actions. Though LDH may be empowered to "develop[] and provid[e] . . . health and medical services for the prevention of disease for the citizens of Louisiana," LA. REV. STAT. § 36:251(B), and to "accomplish the subsidence and suppression of diseases of all kinds," LA. REV. STAT. § 40:5(A)(2), we fail to see how such general grants of authority yield a specific duty here. The statutes, if read as Butler suggests, would make LDH the *guarantor* of Louisiana's health—and sustain a cause of action against LDH for *any* ill person in the state. Butler provides no authority—and we have found none—to indicate the Louisiana legislature intended to saddle LDH with that responsibility. We will not do so here.

Butler makes two other last-ditch arguments, neither of which we accept. First, she claims that Louisiana Civil Code Article 2315 imposes on LDH the "general duty to conform to the standard conduct associated with a reasonable and prudent governmental health agency whose function is to provide health services for the prevention of disease." But as we made clear before, Butler's "retreat to generalized grievances" does not identify a *specific* standard of care that LDH needed to maintain. *See Butler II*, 16 F.4th at 444.

Second, she argues that LDH, through its Health Education and Communication Program, undertook a duty to respond to hazardous

substance exposure issues, evaluate those exposures, and disseminate information about them to the community. Because LDH undertook such a duty to warn, she says, it was liable for negligent performance of that duty.

In support, she cites only to *Indian Towing Co. v. United States*, 350 U.S. 61 (1955). In that case, the U.S. Coast Guard negligently operated a lighthouse, causing a barge to run aground. *Id.* at 62, 68. The Court held that the Federal Torts Claim Act did not foreclose governmental liability for activities that private people do not usually perform (like operating lighthouses). *Id.* at 68–69.

Butler does not explain why we should generalize *Indian Towing*'s holding to the situation we face here (which involves neither the FTCA nor the federal government). But even if we were inclined to do so, in her petition Butler does not mention, allege details about, or otherwise explain LDH's Health Education and Communication Program. She provides only a single example of LDH's warning anyone about chloroprene's effects. Such an allegation does not suffice to show that LDH undertook a specific duty to investigate and warn of chloroprene as it regards the PWF. Butler's argument is unavailing.

\*        \*        \*

Thus, the district court correctly granted DuPont's and LDH's motions.

AFFIRMED.