# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30809

United States Court of Appeals
Fifth Circuit

**FILED**
September 10, 2015

Lyle W. Cayce
Clerk

BOBBY CHARLES BYRD,

>  Plaintiff–Appellant,

v.

CITY OF BOSSIER; CITY OF SHREVEPORT; ROY SHORT, individually and in his official capacity, also known as Officer Short; CHRIS YARBOROUGH, individually and in his official capacity; W. W. LINDSEY, individually and in his official capacity; R. GORDON, individually and in his official capacity,

>  Defendants–Appellees.

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 5:12-CV-1956

Before STEWART, Chief Judge, and BARKSDALE and PRADO, Circuit Judges.

PER CURIAM:*

Plaintiff–Appellant Bobby Byrd filed the present suit under 42 U.S.C. § 1983, alleging that Defendants–Appellees Officer Roy Short of the City of Bossier Police Department and Officer Chris Yarborough, Sergeant W.W. Lindsey, and Detective Robert Gordon of the Shreveport Police Department (collectively "the Officers") used excessive force in the course of arresting him

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 14-30809

on suspicion of burglary. Byrd also alleged that the City of Shreveport and the City of Bossier failed to train the Officers properly. Byrd appeals the district court's order granting summary judgment in favor of the Officers and the Cities. We reverse the district court's grant of summary judgment for Officer Short, Sergeant Lindsey, and Detective Gordon. We affirm summary judgment for Officer Yarborough, the City of Bossier, and the City of Shreveport.

## I. BACKGROUND

In July 2011, officers from the Shreveport, Louisiana Police Department were investigating a string of business burglaries. Video evidence from one of the burglaries depicted a white or Hispanic suspect driving a light-colored minivan that was missing a front hubcap. Later that month, Detective Gordon observed Byrd driving a vehicle matching this description. Officers in marked police cars attempted to effect a traffic stop, with lights and sirens, but Byrd drove away, crossing from Shreveport into Bossier and fleeing toward the Red River. Byrd abandoned the vehicle on the riverbank.

Shortly thereafter, Officer Yarborough arrived with Mico, a police canine. Mico tracked Byrd down a trail, overgrown with vegetation, that ran along the river. After Yarborough arrived at the riverbank, the ground caved under Mico, and the canine fell into the river. To avoid being pulled into the river, Yarborough let go of the leash. Ignoring Yarborough's command to return, Mico swam toward Byrd, who had just surfaced in the middle of the river. Mico reached Byrd and bit him; Byrd forced Mico's head underwater. Mico became disoriented and swam to Yarborough on the bank.

Meanwhile, Officer Short and Sergeant Lindsey arrived at the riverbank. Short waded into the river to retrieve Byrd. After pulling Byrd back to shallow water in a fireman's carry, Short ordered Byrd to place his hands behind his back.

2

No. 14-30809

At this point, the parties' stories diverge. The Officers claim that Byrd resisted arrest by grabbing a submerged tree limb and refusing to comply with the instruction to place his hands behind his back. They further contend that Byrd reached toward his waistband, which was below the water. In light of Byrd's noncompliance and fearing he might be reaching for a weapon, the Officers applied "distraction strikes" to Byrd's head and neck to subdue him. They maintain that they ceased using force after Byrd was handcuffed.

In contrast, Byrd claims that he complied with the instructions to place his hands behind his back, and that each use of force took place after the Officers handcuffed him.[1] As a result of the Officers' use of force, Byrd sustained several injuries, including a dog bite, wounds to both forearms, a broken nose, a broken orbital floor requiring surgical reconstruction with a titanium plate, kidney trauma, and abrasions to his ribs.

Byrd filed suit in July 2012 seeking relief under 42 U.S.C. § 1983 and the Louisiana Constitution. The district court granted summary judgment to the Officers, the City of Bossier, and the City of Shreveport on qualified immunity grounds because it concluded that certain photographs taken while the Officers were apprehending Byrd contradicted his key factual contentions. *Byrd v. City of Bossier*, 23 F. Supp. 3d 665, 666–79 (W.D. La. 2014). The district court declined to continue to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) and dismissed the Louisiana constitutional claims. *Id.* at 679. Byrd timely appealed.

## II. DISCUSSION

The district court had jurisdiction over Byrd's claims pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291.

---

[1] "[COUNSEL]: Before you were handcuffed, were you struck at any time? [BYRD]: No. Not before I was cuffed."

3

No. 14-30809

We review de novo a district court's grant of summary judgment, applying the same standards as the district court. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute for trial exists when a rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586–87 (1986). When the movant and the non-movant's version of the facts diverge, we must accept the non-movant's version. *Scott v. Harris*, 550 U.S. 372, 378–79 (2007). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of a ruling on a motion for summary judgment." *Poole*, 691 F.3d at 631 (quoting *Scott*, 550 U.S. at 380).

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013) (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)). To determine whether an official is entitled to qualified immunity, we examine "(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (quoting *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011)).

## A.    Excessive Force Claim Against Yarborough

Byrd claims that Yarborough used excessive force against him in violation of the Fourth Amendment when Yarborough deployed Mico, the canine. To establish a Fourth Amendment excessive force claim, Byrd must

4

show "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)).

The only evidence in the record indicates that Mico fell into the river by accident and then ignored Yarborough's commands to return to shore.[2] Byrd does not dispute Yarborough's account, and although he contends Yarborough's claim that he dropped the leash to avoid being pulled under is pretextual, he offers no evidence to support this conclusion. Byrd's best evidence for the proposition that Yarborough sicced Mico on Byrd is Byrd's testimony that, as Mico held onto Byrd, "[Byrd] heard one of [the Officers] hollering, [']Get him. Get him,['] or something like that or [']He is getting him.['] Then the officer hollered for the dog." Byrd also maintains it was in error for Yarborough to release the dog knowing that a suspect was nearby.

Viewing the evidence in the light most favorable to Byrd, we conclude that no reasonable jury could find that Yarborough's handling of Mico resulted in a clearly unreasonable use of force against Byrd. Byrd has offered no clearly established law indicating that an officer violates the Fourth Amendment when he loses control of his canine, which proceeds to injure a suspect. Indeed, Fifth Circuit authority suggests Yarborough's handling of Mico was constitutionally adequate, *see Ballard v. Hedwig Vill. Police Dep't*, 408 F. App'x 844, 845 (5th Cir. 2011) (per curiam) (affirming summary judgment where the plaintiff "failed to point to any evidence . . . that [the] officers had a reasonable

---

[2] Byrd makes reference in passing to the expert evidence he offered before the district court via the testimony of Lloyd Grafton. The district court excluded Byrd's expert under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993), and Byrd has abandoned any argument that the district court abused its discretion in excluding Grafton's testimony, *see United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010).

opportunity to prevent or stop the attack"), and there is no robust consensus of circuit authority to the contrary, *see Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) (noting that law may be clearly established through "a robust 'consensus of cases of persuasive authority'" (quoting *Wilson v. Layne*, 526 U.S. 603, 604 (1999))).[3] Accordingly, the district court properly granted qualified immunity to Officer Yarborough.

## B.   Excessive Force Claims Against Short, Lindsey, and Gordon

### 1.   *Photographic Evidence*

Byrd contends that Lindsey, Gordon, and Short beat him while he was handcuffed and subdued. His excessive force claim rests on his testimony that he was wholly compliant with the Officers' commands and that "all of the strikes and punches . . . occurred after" he was handcuffed. But the district court determined that it could not give credence to this testimony because a photograph taken during the arrest allegedly shows the parties struggling *before* Byrd was handcuffed; the district court concluded that this "blatantly contradict[s]" Byrd's testimony.[4]

The photograph at issue is far from conclusive. It depicts Byrd in waist-deep water, two or three feet from the shore. An officer standing on the shore is pressing Byrd's head down toward the water. Two officers are standing in

---

[3] *Compare Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (per curiam) (concluding "it was objectively reasonable . . . to use a canine to locate and apprehend" a plaintiff who "was suspected of having committed one, and perhaps two, armed robberies," who may have been armed and dangerous, and who "actively fled from the police—first in his vehicle, and then by foot after crashing his vehicle into a marked patrol car—and attempted to hide in a densely wooded area"), *with Priester v. City of Riviera Beach*, 208 F.3d 919, 925 (11th Cir. 2000) (overturning qualified immunity for an officer whose dog's attack on the restrained plaintiff "may have lasted as long as *two minutes*"), *and Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994) (reversing summary judgment for officer–defendants where a police dog "was sent to locate a *concealed* suspect," and therefore "would almost necessarily be out of sight of its handler, and hence beyond the reach of a countermanding order," when the dog reached and attacked the suspect).

[4] "Having reviewed the photo, the Court finds that no reasonable jury could believe Mr. Byrd's testimony regarding the officers' use of force." *Byrd*, 23 F. Supp. 3d at 672.

the water next to Byrd—one to his side and one behind him. The officer to Byrd's side appears to be grasping Byrd's right forearm, which is raised in the air, roughly parallel with the water. The district court concluded that the photograph is consistent with the Officers' story that Byrd was resisting being handcuffed and that it "blatantly contradict[s]" Byrd's testimony that "he allowed himself to be handcuffed peacefully and that the officers then began to strike him."[5] The district court therefore chose not to consider Byrd's testimony under *Scott*. 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of a ruling on a motion for summary judgment.").

We conclude that the district court erred in disregarding Byrd's testimony under *Scott*. Byrd stated the following in his deposition:

> [COUNSEL FOR BYRD]: All of the strikes and punches that we have discussed took place after you were handcuffed?
>
> [BYRD]: After Officer Short pulled me up and put my hands behind my back and Detective Gordon came and dunked my head under the water is when the strikes began.
>
> Q: So Officer Gordon came and grabbed you by your hair and dunked you into the water—
>
> A: Yes ma'am.
>
> Q: And pulled you up?
>
> A: Yes, ma'am.
>
> Q: And at that time is it correct that you were struck by you believe two officers?

---

[5] The district court conceded that the photo "could also conceivably be consistent with a story that was more favorable to Mr. Byrd," such as that Byrd "was complying with the instructions to place his hands behind his back but that the officers attacked him before he could be handcuffed" or "that he was simply attacked before he even had a chance to comply." *Byrd*, 23 F. Supp. 3d at 673. Nevertheless, the district court maintained that Byrd's actual testimony—that he was not hit until after he was cuffed—could not be reconciled with the picture. *Id.*

No. 14-30809

A: Yes, ma'am.

. . .

[COUNSEL FOR THE DEFENDANTS]: With regards to the question whether you resisted at any time the officers' efforts to move any part of your body, it is your testimony that you were, quote, completely compliant. Is that right?

[BYRD]: Yes, sir.

While the photograph *tends* to discredit Byrd's testimony, it does not blatantly contradict it. Unquestionably, Byrd was not yet handcuffed at the time the photograph was taken. But although the photo shows the Officers using physical contact to restrain Byrd, the photo does not necessarily depict the Officers "striking" Byrd in the manner that caused his injuries. A jury could conclude that the Officers were not yet using force when the photo was taken: rather, Short held Byrd's forearm, without resistance, to put Byrd's hands behind his back. Or a jury could conclude that the photo supports Byrd's version of events because it was taken mere seconds before the Officers successfully cuffed Byrd. Following that, the Officers might have proceeded to dunk Byrd's head underwater and beat him in the manner he described. Finally, the photo does not necessarily show that Byrd resisted arrest, though that is one rational conclusion that could be drawn from it. A jury could conclude that Byrd—recently rescued from the water—was flailing or grasping for a branch.

A jury may not find Byrd's narrative credible, but the photograph does not blatantly contradict it. Accordingly, the district court erred in refusing to consider Byrd's deposition testimony in its summary judgment analysis. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam).

### 2. *Qualified Immunity Analysis*

Taking into account Byrd's previously excluded testimony, we now turn to his contention that Lindsey, Gordon, and Short applied excessive force in

8

violation of Byrd's Fourth Amendment rights.[6] As noted, to establish an excessive force claim, Byrd must show "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Harris*, 745 F.3d at 772 (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)). To gauge the reasonableness of the force used, we consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). We ask whether the Officers' actions were objectively reasonable at the time rather than from "the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. It is clearly established that use of gratuitous force against a detainee who has been subdued and restrained is unreasonable. *Bush*, 513 F.3d at 501–02.

Here, Byrd's testimony is that the Officers beat him after he was handcuffed and subdued and that this use of force resulted in wounds to both forearms, broken facial bones, kidney trauma, and fractured ribs. The defendants admit that, if Byrd's testimony "were accepted as true, his testimony may be sufficient to create a genuine dispute of material fact for trial." We agree. The competent evidence viewed in the light most favorable to

---

[6] We consider "each individual defendant's entitlement to qualified immunity separately," *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007) (quoting *Jabobs v. W. Feliciana Sheriff's Dep't.*, 228 F.3d 388, 395 (5th Cir. 2000)), but because here the evidence indicates that Short, Lindsey, and Gordon each delivered the "distractionary strikes" that Byrd claims caused his injuries, the analysis is the same for all three. The defendants argue that Byrd failed to allege Short caused his injuries, pointing to a portion of Byrd's deposition where he claims Short did not strike him. However, Short admits to striking Byrd on the back and torso, and Byrd testified that he was injured by blows from several officers whom he could not distinguish. Therefore, on summary judgment we consider the record evidence that Short delivered distractionary strikes to Byrd's torso consistent with his forearm wounds and fractured ribs.

Byrd raises a genuine issue of material fact as to whether the force the Officers applied was clearly excessive and violated Byrd's Fourth Amendment rights in light of clearly established law. Therefore, the district court improperly granted summary judgment to Lindsey, Short, and Gordon.

## C.    Municipal Liability

We liberally construe pro se briefs to avoid waiver. *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 255 (5th Cir. 2008). Even so, Byrd fails to advance any argument against the municipal defendants in his appellate brief. Because he has failed to set forth "his contentions and the reasons for them, with citations to the authorities and parts of the record on which [he] relies," Fed. R. App. 28(a)(8)(A), Byrd has abandoned any claim against the Cities. *See Yohey v. Collins*, 985 F.2d 222, 224–225 (5th Cir. 1993).

## III. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court as to Officer Short, Detective Gordon, and Sergeant Lindsey. We AFFIRM summary judgment for Officer Yarborough, the City of Bossier, and the City of Shreveport. We VACATE the district court's dismissal of the Louisiana constitutional claims, and we leave it in the district court's sound discretion whether to continue to exercise supplemental jurisdiction over these state-law claims on remand. We REMAND to the district court for further proceedings consistent with this opinion.