# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60565
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

April 19, 2018

Lyle W. Cayce
Clerk

ALLEN DOUGLAS HALE, III,

      Plaintiff - Appellant

v.

CITY OF BILOXI, MISSISSIPPI; KENNETH GARNER, Individually;
DARREN LEA; JOHN AND JANE DOES 2-10,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No: 1:16-CV-113

Before JOLLY, OWEN and HAYNES, Circuit Judges.

PER CURIAM:[*]

Officers Kenneth Garner and Darren Lea, of the Biloxi Police Department ("BPD"), respectively shot and tased Allen Douglas Hale III during the execution of an arrest warrant for suspected credit card fraud. Hale subsequently sued Garner and Lea in their individual capacities, along with the City of Biloxi (collectively, the "Defendants"), under 42 U.S.C. § 1983,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60565

asserting a claim for excessive force in violation of the Fourth Amendment. Hale now appeals the district court's summary judgment order dismissing the claims on the basis of qualified immunity. We AFFIRM because Hale has not shown that the force used was clearly excessive or that Garner and Lea violated clearly established law.

## I. Factual[1] and Procedural Background

On the evening of April 1, 2015, Garner was at BPD headquarters when he received a dispatch informing him that Hale was believed to be at a particular R.V. park and that there was a warrant out for Hale's arrest for credit card fraud. Garner headed to the R.V. Park, along with Lea and another officer. The officers had no information specifically indicating that Hale might be armed or violent. As they approached the front door of the R.V. where Hale lived, Garner drew his gun, prompting Lea to draw his. It was dark, and at least one officer used a flashlight to see.

Lea could see Hale sitting inside the R.V. Garner opened the front door, which was unlocked, and said "police department." He told Hale to come out of the R.V., to where the officers were, and said "Put your hands up, don't put them in your pocket." This warning was quickly followed by another "Don't put your hands in your pocket." Hale asked, "What'd I do?" An officer told him to step outside, to which Hale again replied, "What'd I do?" An officer again warned, "Keep your hands out of your pocket." Hale said, "Hold on," and an officer told Hale to "come out"—an exchange that occurred two more times.

When Hale had still not exited the R.V. at that point, he was warned that if he did not comply he would be tased.[2] Hale told the officers, "All I'm

---

[1] Where the parties disagree on the facts, the recitation here sets forth facts in the light most favorable to Hale, the non-movant.

[2] At some point during the encounter, Lea transitioned from his gun to his taser, but it is not clear from the record precisely when this occurred.

2

No. 17-60565

getting is my cigarettes." An officer warned Hale, "Put them down, you're about to get shot." Hale said, "Ok, I'm putting them down," took a cigarette and put it in his mouth, dropped the cigarette pack and turned away from the officers. At that point, Hale was standing several feet directly in front of Garner and Lea.

An officer again told Hale to step outside. Hale replied, "Ok, I am." Hale then continued to turn away from the officers, so that his back was toward them. An officer again started to warn Hale, by saying, "If you don't move out here right now." At that moment, Hale put his hand into his pocket as he turned back toward the officers. Garner fired his gun and Lea simultaneously discharged his taser.

When Hale reached into his pocket, he was ostensibly reaching for his cigarette lighter, but he did not say so at the time. No weapons were found at the scene, but the police recovered a cigarette lighter from the area where Hale was standing when he was shot and tased. Hale underwent surgeries for a gunshot wound to his abdomen and was hospitalized for sixteen days.

Hale subsequently filed the instant lawsuit, alleging that Garner and Lea used excessive force in shooting and tasing him, respectively. Hale also sued the City of Biloxi for having policies that caused the deprivation of his constitutional rights. The district court dismissed Hale's excessive force claims against Garner and Lea on the basis of qualified immunity. Because the district court concluded that Garner's and Lea's actions were not clearly unconstitutional, it also dismissed Hale's claim against the City.

## II. Standard of Review

We review a grant of summary judgment *de novo*, applying the same standard applied by the district court. *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (per curiam). A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any

3

material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We must consider all facts and evidence in the light most favorable to the nonmoving party, but "when there is video evidence available in the record, the court is not bound to adopt the nonmoving party's version of the facts if it is contradicted by the record." *Cass,* 814 F.3d at 728 (quoting *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014)). Instead, we view the facts "in the light depicted by the videotape," *id.*, and we assign greater weight to "the facts evident from video recordings taken at the scene," *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

### III. Discussion

Qualified immunity protects government officials from civil liability when their conduct does not violate clearly established constitutional rights. *Cass*, 814 F.3d at 728. When a defendant invokes qualified immunity, the plaintiff must allege facts showing "(1) that the official violated a . . . constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

To allege the violation of a constitutional right based on excessive force, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Id.* at 731 (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). Our analysis turns on the facts of each case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Brown v. Lynch*, 524 F. App'x 69, 80 (5th Cir. 2013) (per curiam) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Because police officers must

often make split-second decisions in "tense, uncertain, and rapidly evolving" situations, we evaluate the officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396–97.

The City submitted video from Lea's taser and audio from Garner's patrol car as evidence.  The evidence shows that the officers identified themselves as police to Hale, told him to put his hands up, and repeatedly told him to step outside and not put his hands in his pockets.  It also shows that, just after Hale was warned that he was "about to get shot" for lingering in the R.V. and not keeping his hands visible, Hale agreed to comply but then turned his back to the officers, touched his left pocket with his left hand while still turned away, and then put his right hand in his right pocket just as he was turning back to face the officers.

We have on multiple occasions found an officer's use of deadly force to be reasonable when "a suspect moves out of the officer's line of sight such that the officer could reasonably believe the suspect was reaching for a weapon." *Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009) (collecting cases).  Here, Hale took his hand out of the line of sight of Garner and Lea by placing it in his pocket.[3] Reasonable officers could undoubtedly believe Hale was reaching for a weapon and therefore "pose[d] an immediate threat" to their safety.  *Graham*, 490 U.S. at 396.  The whole incident lasted no more than thirty seconds, reflecting the "tense, uncertain, and rapidly evolving" situation Garner and Lea faced in making their split-second decisions.  *Id.* at 397.

---

[3] We analyze "each individual defendant's entitlement to qualified immunity separately," but because Hale's arguments as to Garner and Hale are essentially the same, the analysis is also the same for both of them. *Byrd v. City of Bossier*, 624 F. App'x 899, 904 n.6 (5th Cir. 2015) (per curiam) (quoting *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007)).

Hale argues that no reasonable officer could believe he posed an immediate threat because, unlike in some of our prior cases, Hale was not wanted for a violent offense, resisting or fleeing arrest, or clearly brandishing a weapon.[4] But we made clear in *Manis v. Lawson* that using deadly force may be reasonable absent those factors. *See* 585 F.3d at 845. In *Manis*, police encountered a man idling his car on railroad tracks. *Id.* at 842. Two officers had drawn their weapons and repeatedly warned the man to show his hands and stop reaching under his car seat. *Id.* at 844–45. When the man again reached under his seat and "moved as if he had obtained the object he sought," an officer fatally shot him. *Id.*

In *Manis*, the parties disputed whether the man had also first cursed the officers and flailed his arms and fists at them. *Id.* at 845. But we said those facts had no bearing "on whether [the suspect], in defiance of the officers' contrary orders, reached under the seat of his vehicle and appeared to retrieve an object that [the defendant officer] reasonably believed to be a weapon." *Id.* It was *that* act by the suspect, we said, that led the officer to reasonably fire his weapon. *Id.*; *see also Buchanan v. Gulfport Police Dep't*, 530 F. App'x 307, 314 (5th Cir. 2013) (per curiam) ("[W]here a suspect resists arrest *or fails to follow police orders*, officers do not violate his right against excessive force by deploying their tasers to subdue him." (emphasis added)). Here, Hale similarly ignored repeated orders to not put his hands in his pocket, despite warnings from armed police officers that his conduct might cause him to be tased and shot.

Hale argues, however, that we must look to the totality of circumstances and not just at his decision to put his hands in his pocket. In particular, Hale

---

[4] *See, e.g.*, *Serpas*, 745 F.3d at 770 (5th Cir. 2014); *Ontiveros v. City of Rosenburg*, 564 F.3d 379, 381–82 (5th Cir. 2009); *Reese v. Anderson*, 926 F.2d 494, 495–96 (5th Cir. 1991).

argues the officers recklessly created the circumstances leading up to that moment, including by violating the "knock and announce rule" and not telling him he was under arrest.[5]  Hale argues that he was consequently surprised and confused by the officers' presence and orders and could not be expected to recognize their authority.

It is clear Hale cannot "manufacture an excessive force claim where one would not otherwise exist" by pointing to other purported constitutional violations. *See County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546 (2017). His argument sounds much like the rejected "provocation doctrine" of *Mendez*. Additionally, Hale's "totality of the circumstances" argument fails on the facts of this case.[6]  Although from Hale's perspective the use of force here might have been unreasonable, as, in his opinion, Hale was at home "minding his own business" and "had no reason to believe he would be approached for arrest by a band of armed officers," "a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015).  The officers had announced themselves to Hale as police, and Hale had twice asked, "What'd I do?"  Hale had also agreed, several times, to comply with their orders.  A reasonable officer could conclude from those exchanges that Hale recognized their authority.  When Hale then ignored the officers' repeated orders to exit

---

[5] The "knock and announce rule" generally requires law enforcement officers to knock and announce their presence before entering a person's home. *See Wilson v. Arkansas*, 514 U.S. 927, 930 (1995).  As the district court noted, however, Hale brought only excessive force claims and not a separate Fourth Amendment claim related to a purported knock-and-announce violation.

[6] The Supreme Court in *Mendez* expressly declined to address the argument that, in assessing the totality of the circumstances, courts must take into account "unreasonable police conduct prior to the use of force that foreseeably created the need to use it."  *See* 137 S. Ct. at 1547 n.* (declining to address the argument, stating that "[a]ll we hold today is that *once* a use of force is deemed reasonable under *Graham*, it may not be found unreasonable by reference to some separate constitutional violation").

the R.V and keep his hands visible, including by finally placing his hand in his pocket, where the officers could not see what he was reaching for, Garner and Lea could reasonably believe Hale had only been pretending to comply and was at that moment reaching into his pocket for a weapon.

Moreover, assuming, arguendo, that Garner's and Lea's actions violated Hale's constitutional rights, Hale would still need to show that those rights were "clearly established" at the time.  Hale suggests this standard is met because at the time of the incident, it was clearly established that tasing someone who is not actively resisting arrest and shooting an unarmed, non-threatening suspect violates the Fourth Amendment.  *See, e.g.*, *Tennesee v. Garner*, 471 U.S. 1, 10–11 (1985); *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018).  But we do not define "clearly established law" at "a high level of generality." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (quoting *al-Kidd*, 563 U.S. at 742).  Instead, Hale must point to case law clearly establishing that Lea and Garner acted unreasonably based on facts similar to the particular circumstances they faced—the use of deadly force and a taser where a person suspected of a nonviolent crime ignores repeated warnings to keep his hands visible and step outside of a confined area when he knows the people warning him are armed police officers, even if they have not told him he is under arrest.  *See id.* at 2023–24; *Cass*, 814 F.3d at 732–33; *see also Kisela v. Hughes*, No. 17–467, slip op. at 5 (U.S. April 2, 2018) (per curiam) ("Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015)).

Hale does not cite any such case on point.  Hale does try to distinguish our prior cases where officers were entitled to qualified immunity because they reasonably believed the suspect was reaching for a weapon.  As discussed, Hale

argues that, in those cases, the suspect was wanted for a violent crime, resisting or fleeing arrest, or clearly brandishing a weapon. We have already explained that *Manis* shows Hale cannot prevail on this front. Moreover, the fact that in previous cases we found qualified immunity where such factors were present, but where we did not state that those factors were required for qualified immunity, would hardly provide "fair warning" to Garner and Lea. *See Cass*, 814 F.3d at 728 (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)); *see also Manis*, 585 F.3d at 846 ("[F]ar from clearly establishing that [the defendant officer's] conduct was unlawful, the controlling authority in this jurisdiction did not prohibit his use of deadly force in the similar situation confronting him.").

Lastly, Hale argues the district court abused its discretion by refusing to draw an adverse inference against the Defendants on the theory that a BPD internal investigator destroyed video evidence from Lea's body camera. "An adverse inference based on the destruction of potential evidence is predicated on the bad conduct of the defendant," and therefore Hale must allege facts showing "bad faith" by those who allegedly destroyed such evidence. *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003) (internal quotations and citations omitted).

Hale does not point to any evidence in the record showing bad faith. Instead, he argues that the only explanation for why the video is missing is that a BPD internal investigator destroyed or lost it. This is because, Hale argues, an internal investigator knew the body-camera video existed and yet claimed to not have the video. Hale argues it is implausible that an investigator looking into a police shooting would not have immediately saved a copy of such video and, therefore, the video was likely destroyed or lost by this investigator or another investigator to whom Lea initially gave his body camera. We agree with the district court that this evidence, at most, shows

9

that the video was misplaced, which is not enough to draw an adverse inference. *See id.*

## IV. Conclusion

For the forgoing reasons, we AFFIRM the district court's grant of summary judgment for the Defendants.[7]

---

[7] Hale's only argument on appeal regarding the City is conditional on a reversal as to Garner and Lea. Since we are affirming as to Garner and Lea, we have no argument to address as to the City.